UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

DEBBIE WHITE )
)
v. ) NO. 2:04-CV-118
)
EASTMAN CREDIT UNION )

**MEMORANDUM OPINION**

This age discrimination and Family Medical Leave Act ("FMLA") case is before the Court on the defendant's motion for summary judgment. [Doc. 16]. Plaintiff alleges that her former employer, Eastman Credit Union, discriminated against her on the basis of her age and violated the FMLA when it terminated her on February 10, 2003.

I. **Factual background:**

Reviewing the facts in the light most favorable to the plaintiff, the following sets forth the background of this dispute:

The defendant, Eastman Credit Union ("ECU"), which became a separate corporate entity in January, 2002, is a credit union that was established by Eastman Chemical Company ("ECC"). The plaintiff worked for ECC from January of 1988 until July of 1999 when she became employed by ECU as a teller, despite having no prior experience working for a financial institution. During the course of her employment with ECU, Ms. White worked at the main branch in Kingsport,

Tennessee, an ECU branch in Colonial Heights, Tennessee and a branch located in Building 230 at ECC. At the time of her termination, Ms. White was working at ECU's main branch. As of October 2001, Ms. White was assigned to work in the records vault and at the receptionist desk two days per week and as a teller two days per week, with one day off.

ECU's business hours are from 7:30 a.m. to 5:30 p.m., Monday thru Friday. ECU tellers are required to be physically at their work stations, not just on premises, no later than 7:20 a.m. each morning.[1] On January 11, 2002, Ms. White arrived at her work area at 7:23 a.m. The plaintiff's supervisor, Cathy Byers, discussed Ms. White's tardiness with her, and prepared a memorandum of the discussion which was signed by her and Ms. White. The memorandum states that Ms. White had indicated that she was late due to sickness.

ECU asserts that on June 17, 2002, Ms. White again arrived at her work area after 7:20 a.m.[2] Ms. White denied that she was late. Later that day Ms. Byers met with Ms. White to discuss her tardiness. Following the meeting, Ms. White left work approximately 30 minutes early. ECU submits that Ms. White did not follow proper

---

[1] Plaintiff does not dispute that this was a requirement of her employment nor does she suggest that she was unaware of the requirement. In fact, she acknowledges in the January 11, 2002, memorandum that "the importance and expectation of being in the assigned work area at the scheduled time" was discussed at a teller meeting in December, 2001.

[2] According to Ms. White, Ms. Byers asserted that Ms. White "was 42 seconds late that morning."

2

procedure to request permission to leave. In contrast, Ms. White asserts that she obtained the permission of the head teller on duty, Gwen Freeman, prior to leaving. Ms. White was not scheduled to work the following day, June 18, 2002. Ms. White requested and was granted vacation leave for the remainder of the week, from June 19 thru June 21, 2002.

On June 21, 2002, the plaintiff saw her physician, who recommended that she be off work for another two weeks. After contacting ECU, Ms. White received a short term disability ("STD") benefits application and an FMLA application in the mail. Ms. White completed the STD application and returned it to ECU. She indicated on the STD application that the dates of her disability were June 21, 2002 thru July 22, 2002. The diagnosis section of the application indicates "anxiety/depression." Ms. White did not fill out the FMLA application, having heard from co-workers that FMLA leave had to be "taken without pay." Ms. White was contacted by Neil Danehy, Vice President of Human Resources at ECU, inquiring about her failure to complete the application. Mr. Danehy confirmed that FMLA leave was leave "without pay," and told Ms. White that she need not complete the paperwork if she did not want the leave. Ms. White asserts that had she known that the FMLA leave could run concurrently with her STD and would have protected her from being fired or disciplined for being absent from work, she would have filled out the FMLA application.

3

Ms. White returned to work on July 29, 2002, to the same position held prior to her medical leave. On that date she received a "final warning" from Ms. Byers for her tardiness on June 17, 2002, and also for leaving early on June 17, allegedly without following proper procedures.[3]

On February 5, 2003, Ms. White called in sick and took a vacation day. ECU submits that on February 6, 2003, Ms. White again arrived somewhere between two and three minutes late to her assigned work area. On February 10, 2003, Neil Danehy met with Ms. White to discuss her tardiness on February 6. A statement, which Ms. White signed, was prepared at that time, in which Ms. White indicates that she did not believe she was late, but that she did not know what time she had arrived. When she arrived at work that morning, Ms. Byers engaged Ms. White in a conversation about her health and family, resulting in her being late in arriving at her work station.

Also on February 10, a disciplinary review committee was convened, consisting of Byers, Danehy, Olan O. Jones, Jr., President of ECU and committee chairperson, Bob Viers, Senior Vice President of ECU, Gary Tucker, Senior Vice President of Marketing, and Donna Sanders, Director of Human Resources. Ms. White was invited to attend the meeting, but declined. During the meeting, the committee

---

[3] Ms. White's affidavit in opposition to ECU's motion for summary judgment refers to June 21 as the date of her alleged tardiness; however, it appears to the Court that the correct date is June 17.

4

reached a consensus to terminate Ms. White's employment effective February 10, 2003. Mr. Viers and Ms. Byers advised Ms. White of her termination.

ECU maintains that Ms. White was replaced by Jane Ann Carico, who, at the time she replaced Ms. White, was 42 years old and a member of the protected class. At the time of Ms. White's termination, Ms. Carico was already a part-time employee of ECU. She apparently began her full-time employment with teller operations on March 24, 2003. Ms. White, however, submits that she was actually replaced by a much younger person. She asserts that the first teller hired after her discharge on February 10 was Stacy Ervin, a 25 year old male, who was hired on February 24, 2003. At the time of his employment by ECU, Ervin was a temporary employee who had previously trained at the credit union. The defendant argues that the decision to hire Ervin was made prior to Ms. White's termination, and that he was hired to work at the Hawkins County ECU branch. Ms. White also points to the hiring of Jennifer Luethke, a 24 year old female, who was hired as a full time teller on March 24, 2003, the same day on which Carico was hired. Ms. Luethke had not previously worked for ECU and Ms. White asserts that she was the only "new" full time teller hired after February 10, 2003. ECU, on the other hand, argues that Ms. Luethke was interviewed for her position prior to Ms. White's last tardy. ECU submits that Ms. Luethke was hired to fill a position vacated by another employee who was promoted to a different position. ECU further submits that Ms. Carico was offered Ms. White's former

5

position sometime prior to March 3, 2003.

As further part of her claims, the plaintiff asserts that during the course of her employment with ECU, she was passed over for promotions in favor of much younger employees who had less seniority.

II. **Standard of Review:**

Summary judgment is appropriate when "there is no genuine issue of material fact." *Fed.R.Civ.P.* 56(c). The moving party bears the initial burden of proving that no material facts exist, and the court must draw all inferences in a light most favorable to the non-moving party. A court may grant summary judgment when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial. *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992) (citations omitted).

In accordance with long standing summary judgment principles, this Court must construe the evidence in this record most favorably for the plaintiff because she is the litigant opposing summary judgment. *E.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88(1986); *Scott v. Clay County*, 205 F.3d 867, 871 (6th Cir.2000). As explained by the Sixth Circuit in Scott,

> "Credibility determinations, the weighing of the evidence,

> and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.... The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citation omitted). *See also Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Adams v. Metiva*, 31 F.3d 375, 378-79 (6th Cir.1994). (emphasis added)

Id. at 871.

### III. **Discussion:**

A. <u>Ms. White's Age Discrimination Claim</u>

Ms. White alleges that, because of her age, she was passed over for promotion and was terminated from her employment. The plaintiff has not set forth direct evidence of age discrimination, and therefore, the Court must analyze the sufficiency of her claim utilizing the *McDonnell-Douglas* test. In order to set forth a *prima facie* case of age discrimination, the plaintiff must establish that:

(1) Plaintiff was a member of the protected class,
(2) Plaintiff suffered an adverse employment action,
(3) Plaintiff was qualified for the position either lost or not gained, and
(4) A person not of the protected class replaced, or was selected over, the plaintiff.

*Manzer v. Diamond Shamrock Chemicals Co.*, 29 F. 3d 1078, 1081 (6th Cir. 1994).

It is the fourth prong of this test which the defendant submits the plaintiff is

7

Case 2:04-cv-00118 Document 48 Filed 03/22/06 Page 7 of 12 PageID #: 47

unable to prove. The defendant concedes that Ms. White can establish the first three elements of her *prima facie* case. The defendant submits that Ms. White was replaced by an employee who was also within the protected class, and was only five years younger than Ms. White. In contrast, the plaintiff submits that she was actually replaced by one of two persons hired shortly after she was terminated, both of whom were significantly younger than the plaintiff. The defendant vehemently denies that these employees were hired to replace the plaintiff; however, the proof reflects that those employees were hired either before or contemporaneously with the employee who defendant alleges was actually hired to replace the plaintiff. Therefore, at the very least, the plaintiff has managed to establish a material dispute of facts as to whether she was replaced by a significantly younger person.

Having found that Ms. White has set forth sufficient proof to establish a *prima facie* case of age discrimination regarding her termination for summary judgment purposes, the burden shifts to the defendant to articulate a non-discriminatory reason for Ms. White's termination. Once the defendant has set forth a legitimate non-discriminatory reason, the burden shifts back to the plaintiff to prove that the legitimate reason proffered by the defendant was merely a pretext for discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 2106 (2000). The defendant has set forth a non-discriminatory reason for Ms. White's termination, that is, the few occasions upon which Ms. White was briefly tardy for work. While tardiness is certainly a

legitimate ground for termination in virtually every employment setting, the plaintiff argues that the reason is merely a pretext for discrimination as evidenced by the defendant's failure to terminate other employees with far more tardies.

In fact, the plaintiff points out that two employees who received documented discussions about being late, one of whom was documented as being late on ten separate occasions, were also praised in those documented discussions, and neither was placed on any type of probationary status nor terminated, as was the plaintiff. Defendant has set forth plausible reasons for different treatment of those employees. However, the legitimacy of the defendant's reasons versus the plaintiff's argument that the unequal treatment reflects discrimination is a question for the jury. Defendant is not entitled to summary judgment on Ms. White's age discrimination claim as to her termination from employment.

As to Ms. White's claim of age discrimination for failure to promote, Ms. White has failed to set forth a *prima facie* case because the individual selected for the only promotion for which Ms. White applied was older than Ms. White. Ms. White further complains that many other employees who had been with ECU a shorter time than she were moved to better positions even without applying for a promotion. Notably, many of those employees were either older than, or not significantly younger than, the plaintiff. Further, to justify her entitlement to these positions, the plaintiff only indicates that she had been employed by either ECU or ECC longer than those employees had been employed by

9

ECU, but not that she was as qualified for those positions. Defendant's motion for summary judgment on Ms. White's age discrimination claim for failure to promote will be granted.

  B. <u>Ms. White's FMLA Claim</u>

  Plaintiff submits that the defendant violated the Family and Medical Leave Act by using the June 17, 2002 incident where Ms. White allegedly left work early without permission as a ground for her termination. Of course, to support Ms. White's argument, it is necessary that she must have put the defendant on notice that she suffered from a serious health condition on June 17, 2002. Reasonable notice to an employer of the FMLA event requires enough information from which an employer can reasonably conclude that an FMLA event has occurred. *Hammon v. DHL Airways, Inc.*, 165 F. 3d 441, 451 (6th Cir. 1999). Defendant concedes that it knew that Ms. White had a serious health condition under the FMLA as of June 21, 2002, but argues that it had no reason to believe that she suffered from a serious health condition prior to June 21, 2002. The evidence before the Court supports the defendant's argument.

  The undisputed facts reflect that Ms. White left early on June 17, 2002. While it is disputed whether she left with or without permission, such is not material to the FMLA claim. It is undisputed that Ms. White had just had a discussion with Ms. Byers on June 17, 2002, that Ms. White was subsequently upset, but that the defendant had no reason to believe that Ms. White suffered from a serious health condition under the FMLA at that

time. On June 18, 2002, the plaintiff was not scheduled to work. The plaintiff requested, and was granted, vacation time for the rest of the week.

It was not until Friday, June 21, 2002 that the plaintiff saw her physician, who recommended that she be off work for at least another two weeks and prescribed anxiety medication for her. At that time, the plaintiff put her employer on notice of her serious health condition by calling ECU. Also at that time, the plaintiff applied for short term disability benefits, and was also provided paperwork for FMLA application by ECU. The plaintiff only filled out the short term disability benefits application, and her doctor indicated on that form that her serious health condition began on June 21, 2002, not June 17, 2002.

The plaintiff makes a strained argument that she did not fill out the FMLA application because she was not advised that she could take FMLA protected leave concurrently with short term disability leave, but was instead told that she would not receive pay during a FMLA leave. Somehow the plaintiff attempts to find some inconsistency in this statement. However, the Court sees no such inconsistency, as short term disability benefits would not be considered a payment of wages from her employer, and thus to say that she would not be getting paid during FMLA leave is not inconsistent with her receiving short term disability benefits concurrent with FMLA leave. Further, it is merely speculative to assume that the plaintiff would have indicated on the FMLA application that her disability began on June 17, 2002, when the only proof of her

11

disability submitted by the plaintiff to her employer is that in which her physician states that her disability actually began on June 21, 2002.

Accordingly, the Court finds that the plaintiff has not set forth a case for an FMLA violation, as her employer was not reasonably put on notice of her disability.

An order consistent with this opinion shall enter.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
